Kepler *et al. v.* Wright *et al.*

No. 16,497.

KEPLER ET AL. *v.* WRIGHT ET AL.

DRAINAGE.—*Ditch, Establishment of.*—*Injunction* (1).—*Notice, Sufficiency of* (2, 4).—*Judicial Notice* (3).—*Estoppel* (4, 5).—*Expenditures* (5).—In April, 1876, A. was the owner of certain lands, which he conveyed to B., whose deed was recorded April 12, 1876. In February, 1875, the lands had been sold to C. for delinquent taxes, and in August following, A. redeemed from the tax sale, and received a proper *quietus* and certificate of redemption, but no record of such redemption was made in the office of treasurer or auditor of the county. In October, 1875, C. died, leaving E. *et al.* as his heirs at law, and on February 16, 1877, a tax deed was made for such lands, naming C. as the grantee, and the same was recorded March 1, 1877, and thereafter the lands appeared on the transfer books and on the tax duplicates in the name of C.'s heirs, E. *et al.* In February, 1890, the board of commissioners of the county, upon petition for drainage, appointed viewers, who reported that the drain would pass through said lands, describing them as the lands of E. *et al.*, heirs of C., and that such lands, with others, would be benefited by the proposed drainage, and the notices and further proceedings in relation to said drainage recited that the lands belonged to E. *et al.*, heirs of C., no notice having been given B. of such proceedings, B. being a nonresident and having no knowledge of the drainage proceedings till in October, 1891. On October 7, 1891, B. obtained a decree quieting her title to such lands, as against E. *et al.*, heirs of C., and on October 30, 1891, B. conveyed an undivided one-half of the lands to F., and F. conveyed an interest therein to G. Eleven miles of the ditch having been completed, from its source to such lands, B., F. and G. brought suit to enjoin the threatened construction of the drain through such lands, they being uninclosed, unimproved, and unoccupied at the beginning and during the pendency of the ditch proceedings.

*Held* (1), that the ditch proceedings were not void as to B., F. and G., and that the threatened construction of the drain through such lands should not be enjoined.

*Held* (2), also, that it is not required that the notice of the ditch proceedings shall state the names, at all hazards, of the actual owners of the lands affected, but that they shall be stated so far as they can be ascertained from reasonable inquiry and search of the records.

*Held* (3), also, that the court can not know that the failure to enter the redemption of record was the fault of the auditor whose duty it was to give the notice, nor can the court presume the existence of

knowledge on the part of the auditor or by the board of commissioners that the tax deed was invalid, either because executed after the death of C. or because of a prior redemption.

*Held* (4), also, that B., having knowledge of the requirements as to notice of drainage proceedings, and being chargeable with knowledge that the records showed legal title in the heirs of C., he could not be heard to complain that the notice given was insufficient.

*Held* (5), also, that where large sums of money have been expended in the construction of a public ditch which promises great public and private benefits, the same can not be stopped and the expenditure wasted because of a slight irregularity.

From the Pulaski Circuit Court.

*D. C. Justice* and *B. Borders*, for appellants.
*J. C. Nye* and *R. A. Nye*, for appellees.

HACKNEY, J.—This suit was by the appellants to enjoin the construction of a drain through lands alleged to have been owned by Frances M. Kepler, Burlingame Borders, and Frank L. Dukes, as tenants in common.

The questions for review in this court arise upon the special findings and conclusions of law by the circuit court. From these, it appears that in April, 1876, one Forrest was the owner of the lands and conveyed the same to Frances M. Kepler, whose deed was recorded April 12, 1876. In February, 1875, said lands had been sold to Jacob Wood for the delinquent taxes of 1873 and previous years, with penalties and the current taxes of the year 1874. In August following, said Forrest redeemed from said sale by paying all taxes, penalties and interest and receiving proper *quietus* and certificate of redemption, but no record of such redemption was made in the office of the treasurer or auditor of said county. In October, 1875, said Jacob Wood died leaving C. David Wood and others, as his heirs at law, and thereafter, on the 16th day of February, 1877, a tax deed was made for said lands, naming said Jacob Wood as the grantee, and the same was recorded March 1, 1877, and thereafter the

Kepler *et al. v.* Wright *et al.*

lands appeared on the transfer books and tax duplicates in the name of "Jacob Wood, etc."

In February, 1890, the Board of Commissioners of Pulaski County, upon petition for the drainage complained of, appointed viewers, who reported that said drain would pass through said lands, describing them and designating them as the lands of C. David Wood and others, heirs of said Jacob Wood, deceased, and that said lands, with other lands, would be benefited by the drainage proposed. The notices and further proceedings in relation to said drainage recited that said lands belonged to said Wood heirs.

It is expressly found that no notice was given the appellants, and that said Frances M. Kepler, at all of the times mentioned, resided in Cincinnati, Ohio, and had no knowledge of said proceedings until in October, 1891. None of the appellants were named in said proceedings, and had no notice thereof excepting that said Borders, as attorney for one of the ditch petitioners, appeared before the board of commissioners and filed the petition for said drainage and assisted the viewers in making their report, and had knowledge of the location and construction of the ditch at the time and during the pendency of the proceedings.

Under said proceeding, eleven miles of the contemplated drain were completed, from the source thereof towards the outlet, when the lands of the appellants were reached, and, at the beginning of this suit, the appellees were about to enter upon said lands and construct said drain from thirty to sixty feet in width, six and one-half feet deep, and two hundred and fifty rods in length, as directed by the order of said board of commissioners. But, prior to the beginning of this suit, and on October 7, 1891, said Frances M. Kepler obtained a decree against said Wood heirs quieting her title to said lands, and, on

the 30th day of October, 1891, she conveyed to said Borders an undivided one-half of said lands, and he thereafter conveyed an interest therein to Dukes.

It is also found that said lands were uninclosed, unimproved and unoccupied at the beginning and during the pendency of said ditch proceedings.

Upon the facts so found, the court stated its conclusions of law, in effect that the ditch proceedings were not void as to the appellants, and that the threatened construction of the drain should not be enjoined.

The appellants urge that they were entitled to their day in court; that the Legislature could not have authorized the taking of their lands without that due process of law which requires previous notice; that less than this is confiscation, and that the statute under which the proceeding for drainage was had required such notice.

For the appellees, it is contended that the ditch proceeding, under sections 4285 to 4317, R. S. 1881, is *in rem*, and that it is not essential that such notice be given to the land-owner as required where the proceeding is *in personam;* that this suit does not involve the personal rights of the appellants, and that the questions of who were land-owners, and the sufficiency of the notices to them, were passed upon by the viewers and by the auditor and commissioners, and can not, therefore, be attacked collaterally, however erroneously decided by them; that the statute required notice only to such persons as, by inquiry and a reasonable search of the records, appeared to be the owners of the lands affected, and that to such the required notice was given.

The following provisions of the statute are urged as affecting the questions in issue: ''And they [the viewers] shall also ascertain and give the names of the owners of the lands that are assessed for the construction of said ditch, drain, or watercourse, as far as they can be

Kepler *et al. v.* Wright *et al.*

ascertained with reasonable inquiry and search of the public records.'' Section 4286, R. S. 1881.

''It shall be the duty of the auditor, on said report being filed, if it be in favor of the proposed work, to cause a notice to be given, by publication, for three consecutive weeks, by posting three written copies of said notice in three public places in the township or townships where the proposed work is located, and one at the door of the court-house in said county, of the pendency of said petition, and the time set for the hearing thereof; which notice shall briefly state where said ditch commences at its source, through whose lands it passes, and where it terminates at the outlet, together with the names of the owners of the lands that will be affected thereby, so far as they can be ascertained with reasonable inquiry and search of the public records in the offices of the clerk, recorder, auditor, and treasurer; and at the same time the auditor shall mail a copy of the same to all nonresidents whose address is known to him or can be ascertained by inquiring at the treasurer's office.'' Section 4293, R. S. 1881.

''And this act shall be liberally construed to promote the drainage and reclamation of wet or overflowed lands; and amounts due to contractors, holding the surveyor's certificate of acceptance, shall not be defeated by reason of any defect in the proceedings occurring prior to the order of the board of commissioners establishing the ditch, but such order or judgment of said board shall be conclusive that all prior proceedings were regular and according to law.'' Section 4317, R. S. 1881.

It will thus be seen that the notice shall state the names of those through whose lands the ditch passes and of those whose lands are to be affected by the ditch as such names may be ascertained by the auditor from a

reasonable inquiry and search of the records of the offices named. It is, we have no doubt, the intention of this provision not to require that the notice shall state the names, at all hazards, of the actual owners of the lands affected. The requirement is that they shall be stated so far as they can be ascertained from reasonable inquiry and search of the records. To require the names of the actual owners to be stated would not only be difficult in many instances, but would often be impracticable, and, as said in *Featherston* v. *Small*, 77 Ind. 143: ''To give such construction, and at the same time to hold the proceedings invalid and assailable collaterally on account of a misstatement of the ownership of a piece of affected land, would make the law an instrument of injustice in the hands of the cunning and unscrupulous, whereby, escaping their own just proportion of the burden, they could procure the improvement of their property at the expense of others.''.

That such should be the construction of the present statute is the effect of the appellants' contention.

The case from which we have quoted, as above, held that the names of the actual owners were not required under a statute providing that ''the notice shall contain * * * the names of the owners of the lands affected.'' 1 R. S. 1876, p. 428. But the ruling there made was afterwards held to have been erroneous, because, as there stated, ''the statute is explicit that the names of the owners of the land affected by the proposed ditch must be contained in the notice.'' *Vizzard* v. *Taylor*, 97 Ind. 90.

It was further said, in the case first cited, that ''it would, no doubt, have been competent for the Legislature to have made the notice sufficient, by describing the lands affected, without naming the owners.''

The following additional cases have been decided, giv-

Kepler *et al. v.* Wright *et al.*

ing more or less strength to the decision of *Vizzard* v. *Taylor, supra,* but all of them, under the act of March 9, 1875: *Wright* v. *Wilson,* 95 Ind. 408; *Brosemer* v. *Kelsey,* 106 Ind. 504; *McCollum* v. *Uhl,* 128 Ind. 304.

If the act of 1881, *supra,* were the same as that of 1875, we would feel that these cases should control the present, but, as we have shown, the act of 1881 does not require the statement of the names of the actual owners, and only requires that such shall be shown as may be ascertained to be the owners from a reasonable inquiry and search of the records.

The case of *McCollum* v. *Uhl, supra,* involved the question of notice under the acts of 1875, and the allegation of the complaint, upon the subject of notice, was that notice was given to those shown by the records to have been the owners. That part of the allegation as to the showing of the records was held to limit the requirement of notice to the owner, and that "the statute required notice to the owner of the land, whether he was shown to be such owner by the records * * * or not."

Thus, the difference in the two statutes is made clear and marked.

The litigation in the cases cited and the hardships pointed out in *Featherston* v. *Small, supra,* under the act of 1875 was, we have no doubt, the cause, and supplies the reason for the change wrought by the act of 1881.

The case of *Scudder* v. *Jones,* 134 Ind. 547, 32 N. E. Rep. 221, under the act of 1881, is cited in support of the contention of the appellants, but that case is distinguishable from the present in that, upon the subject of notice, it was clearly shown that no notice whatever was given, not even that contemplated by the more liberal act of 1881.

The case of *Davis* v. *Lake Shore, etc., R. W. Co.,* 114 Ind.

364, also cited by appellant, is not under either of the statutes cited, but arose under the act of 1885, Elliott's Supp., section 1193, relating to repairs by the surveyor, of drains already constructed, and containing provisions as to notice unlike either of the other statutes referred to. It was considered upon the presumption that no attempt was made to comply with the requirement as to notice, and is, therefore, not in point in this case.

The finding in this case shows a notice of the pendency of the proceeding containing all of the elements required by the statute, if the record title in Jacob Wood, as shown by the records of deeds, may be sufficient to answer the requirements of the statute, or if the tax duplicates and the transfer records in the auditor's office, showing title in Jacob Wood's estate, are sufficient, when coupled with the information of the death of Jacob Wood and as to who were his heirs.

If the actual owners were not required to be named, but it was sufficient to name those who, from reasonable inquiry and search of the records, were owners, then when the auditor observed the tax sale to Jacob Wood, upon delinquencies prior to Kepler's purchase, and observed that the lands were on the tax duplicate in name of the estate of Jacob, and pursuing the inquiry as to who were Jacob's heirs, as the inquiry was suggested by both the transfer record and the tax duplicate, and the records failing to disclose any redemption from said sale, we can not avoid the conclusion that from inquiry and reasonable search said heirs were shown to be the owners, and notice to them was a compliance with the statute.

We can not know that the failure to enter the redemption of record was the failure of the auditor, whose duty it was to give the notice, nor can we presume the existence of knowledge on his part or by the board of commissioners that the tax deed was invalid, either because

executed after the death of Jacob Wood or because of a prior redemption. These possible questions as to the sufficiency of the legal title in Jacob or his heirs, or the weakness in, or clouds upon, the title of Kepler were not to be adjudicated and set at rest before the ditch proceedings could be advanced. Such difficulties might have arisen under the old statute, but they would not arise under that of 1881.

Kepler, knowing, as the law charges notice, that the record showed legal title in Jacob Wood, and knowing the legislative requirement as to notice of drainage proceedings, could not reasonably complain that the notice given in the manner found by the court was not sufficient.

The complaint that one should not be required to stand at the court house door and watch for proceedings affecting his lands, applies with as much force to all constructive notice as to that required by the statute under consideration. The supposed evil consequences of the notice in this case are due, if they exist, to the failure of the appellant, Kepler, to quiet his title at some time between April, 1876, and February, 1890, instead of delaying until in October, 1891.

As we have said, this is not a case where no notice was given; on the contrary, notice was given in substantial compliance with the statute. But if the notice was defective in not stating the name, as the same appeared of record, but in stating the wrong name, we are not at liberty to hear complaint of that error in this collateral proceeding, as the commissioners impliedly held that the notice given was sufficient, and that decision can only be reviewed upon an appeal. *Otis* v. *De Boer,* 116 Ind. 531, and the numerous cases there cited; see, also, *Bass* v. *City of Fort Wayne,* 121 Ind. 389.

This rule, in our judgment, is made applicable and is

expressly enforced by section 4317, R. S. 1881, above quoted.

It is the policy of the law, and in this instance it is the letter of the law, that the order and judgment of the commissioners shall be conclusive of the questions of the regularity of the proceedings. To say that a great system of drainage, eleven miles of which has been completed, with the expenditure of large sums of money and promises of great public and private benefits, may be stopped, the expenditure wasted, and a pond or lake created, because of a slight irregularity, is not sanctioned by the law and can not receive the aid of equity. We need not consider whether the proceedings were exclusively *in rem* or whether they were *in rem* and *in personam*.

So far as this suit is concerned the proceeding, as affecting the property, is all that is before us, and we have no question as to the validity of any assessment, but we may say with propriety, we believe, that there seems to be little room for discrimination between the two liabilities under the present statute.

Finding no error in the record, the judgment of the circuit court is, in all things, affirmed.

Filed Dec. 22, 1893.